NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

CA 17-436 consolidated with CA 17-437

CALVIN PAUL WILLIAMS

VERSUS

VINCENT ALEXANDER

**********

APPEAL FROM THE
BREAUX BRIDGE CITY COURT
PARISH OF ST. MARTIN, NO. 16-260 C/W NO. 16-270
HONORABLE RANDY P. ANGELLE, CITY COURT JUDGE

**********

CANDYCE G. PERRET
JUDGE

**********

Court composed of Elizabeth A. Pickett, John E. Conery, and Candyce G. Perret, Judges.

AFFIRMED.

**Randy M. Guidry**
**Durio, McGoffin, Stagg & Ackermann**
**P. O. Box 51308**
**Lafayette, LA 70505**
**(337) 233-0300**
**COUNSEL FOR APPELLANT:**
**Vincent Alexander**

**Calvin Paul Williams**
**417 Martin St.**
**Breaux Bridge, LA 70517**
**(404) 823-7348**
**APPELLEE, In Proper Person**

**PERRET, Judge.**

This appeal involves two consolidated cases regarding a construction contract. The contractor, Calvin Paul Williams (Mr. Williams), filed a Statement of Claims asserting he is owed money by Vincent Alexander (Mr. Alexander) for work he performed under a construction contract. Mr. Alexander denied any money was owed and, instead, filed suit seeking money damages for breach of contract. The trial court rendered judgment in favor of Mr. Williams for $1,125.00 with legal interest from date of judicial demand plus all costs of the proceedings, and dismissed the suit filed by Mr. Alexander. Mr. Alexander now appeals. Mr. Williams did not answer the appeal. Finding no manifest error, we affirm.

## ISSUE FOR REVIEW

This court must decide whether the trial court erred in finding that Mr. Williams performed the construction contract in a good, workmanlike manner, free from defects in either materials or workmanship and thus was entitled to payment per the contract.

## FACTUAL AND PROCEDURAL HISTORY

Appellant, Mr. Alexander, entered into a contract with appellee, Mr. Williams on June 13, 2016, to perform certain repairs to a building located at 360 Cannery Road, Breaux Bridge, Louisiana. The construction contract included carpentry, electrical, and plumbing work. The agreed upon price for the work was $2,750.00. Mr. Alexander partially paid Mr. Williams in advance for the work.

Subsequently, Mr. Williams contends that he completed the work pursuant to the agreement. However, Mr. Alexander alleges that Mr. Williams' work was sub-par and incomplete.

After becoming dissatisfied with the work, Mr. Alexander consulted and hired other contractors to repair the defects. At the time, Mr. Alexander had partially paid Mr. Williams up front for the job, but stopped payment on the final check for the amount of $1,150.00 when he became dissatisfied with Mr. Williams's work.

Mr. Williams thereafter filed a Statement of Claim and Citation alleging the work for which he was hired was completed, yet full payment had not been made. Mr. Williams asserts that he was hired to provide installation and electrical work for Mr. Alexander. Mr. Williams states that, after completing the work requested, Mr. Alexander checked the work and wrote him a check for the remainder of the amount owed under the contract. However, a stop payment was later issued on this check by Mr. Alexander. In support of his claim, Mr. Williams attached the purchase order for the work.

Likewise, Mr. Alexander also filed suit seeking money damages for breach of contract. Mr. Alexander alleges that Mr. Williams's workmanship was faulty, requiring him to hire other contractors to finish and fix the work Mr. Williams was originally hired to do. Consequently, Mr. Alexander claims he incurred additional costs to repair the problems caused by Mr. Williams's faulty work.

Mr. Alexander requested and the court agreed to consolidate both suits.

At the trial, both parties presented their claims pro se. There is no dispute that Mr. Williams and Mr. Alexander entered into a contract for contractor work. The testimony evidenced an agreement between the parties for certain work to be performed for the amount of $2,750.00. The work agreed upon was detailed in a purchase order and included: the installation of a three compartment sink, relocation of a washer and dryer hook up, installation of an electric hook up for a

stove, installation of a long neck hood for a stove, installation of a receptacle for a stove, installation of a small sink and wash tub, relocation of the hot water tank, closure of a door, relocation of a door, and closure of the previous door opening.

Mr. Williams testified all the appliances were provided by Mr. Alexander, including the stove hood. Mr. Williams agreed to install a long neck hood, however, Mr. Alexander provided him with a hood that is installed under a cabinet. Mr. Williams testified the long neck hood was necessary because cabinet doors would not open due to a beam that was in the way. Mr. Williams also testified he did not place the receptacle box for the hot water heater up top where Mr. Alexander wanted it because he could not do so safely. Instead, he put the receptacle box lower, where it would not be near a sink, causing a safety hazard. Mr. Williams testified he completed all the tasks required of him in the contract. Mr. Williams introduced the purchase orders he and Mr. Alexander agreed on, as well as blueprints showing the location of the washer and dryer, the sink, and the type of stove hood to be installed.

Mr. Alexander presented testimony from Larry Carmouche, a contractor he hired after Mr. Williams. Mr. Carmouche testified he refinished sheetrock work, screwed a three compartment sink into the wall so it would be sturdier, and closed a hole or window opening with vinyl sheeting for Mr. Alexander. Although Mr. Alexander alleges Mr. Williams failed to install the three compartment sink, Mr. Carmouche testified the three compartment sink was already installed when he arrived. Mr. Carmouche further testified he did not see any leakage from the sink. Mr. Carmouche did testify that the cabinets above the stove hood would not open because of a beam. Therefore, Mr. Carmouche lowered the cabinets so the doors would open. Mr. Carmouche also testified the door installed by Mr. Williams was

operable, it would open and close, but it appeared to be leaning slightly. Mr. Carmouche was not asked to fix the door.

Mr. Alexander also presented Ozer Alexander, an electrician who worked on the property after Mr. Williams. Mr. Ozer testified the water heater plug was too low and, with the tank was against the wall, the receptacle box could not be reached where it was currently located. Mr. Ozer also testified the stove required a four-wire plug but only a three-wire plug was installed. The four prong receptacle for the stove was acceptable, but the wire, a three prong wire, was not acceptable. Mr. Ozer also testified the dryer could not be plugged in because the vent dryer duct was in the way. The hole for that duct was also larger than the duct.

Mr. Alexander next presented Francis Alexander, a plumber. Mr. Francis testified the work Mr. Williams completed would have worked, but that there were leaks from the sink faucet. Mr. Francis also testified the drain was not properly connected; therefore, the water would drain on the floor. Mr. Francis estimated the fix would be twenty-five dollars ($25.00).

On October 10, 2016, the trial court ultimately ruled in favor of Mr. Williams in open court, finding Mr. Williams completed the work required of him by the contract in an operational manner, although the work may not have been performed to a high standard, comparing Mr. Williams's work to a "Volkswagen" rather than a "Cadillac." The trial court pointed out that there were no conditions or standards specified in the contract other than the work was to be performed. The trial court also deducted $25.00 from Mr. Williams's contract price for the cost of fixing the improperly installed drain. The trial court's judgment was reduced to writing and signed on October 24, 2016. Mr. Alexander now appeals.

## STANDARD OF REVIEW

On appeal, the trial court's factual findings in a breach of contract claim are reviewed under the manifest error or clearly wrong standard of review. *See Maxwell v. Cayse*, 10-680 (La.App. 3 Cir. 12/8/10), 54 So.3d 118. Under the manifest error standard, the trial court's factual findings should not be set aside unless they are clearly wrong or manifestly erroneous. *Rosell v. ESCO*, 549 So.2d 840 (La.1989); *McCorvey v. McCorvey*, 05-889 (La.App. 3 Cir. 2/1/06), 922 So.2d 694, *writ denied*, 06-435 (La. 4/28/06), 927 So.2d 295; *Maxwell*, 54 So.3d 118. Therefore the appellate court must only consider whether the fact finder's conclusion was reasonable. *Maxwell*, 54 So.3d 118.

## LAW AND DISCUSSION

A contract involving work to be done on the owner's premises is a building contract within the definition of Louisiana Civil Code Article 2756. *Martin v. AAA Brick Co., Inc.*, 386 So.2d 987 (La.App. 3 Cir. 1980). "It is implied in every building contract that the work of the builder be performed in a good workmanlike manner, free from defect either in material or workmanship." *Martin*, 386 So.2d at 990 (quoting *Neel v. O'Quinn*, 313 So.2d 286, 289 (La.App. 3 Cir.), *writ denied*, 319 So.2d 440 (La.1975)). A contractor is liable for damages to an owner only if he fails to do the work he contracted to do, or if he fails to execute the work in the manner and at the time he agreed to perform it. La.Civ.Code art. 2769. This provision has been interpreted to mean that, "when a contractor has 'substantially performed' a building contract, even though certain defects are present, he is entitled to recover the contract price, and the owner is relegated to having the price reduced by the amount necessary to perfect or complete the work, i.e., damages attributable to the breach." *Martin*, 386 So.2d at 990 (quoting *Neel*, 313 So.2d at

5

290).  This court has defined substantial performance as meaning "the construction is fit for the purposes intended despite the deficiencies; this is a question of fact for the trial judge." *Maxwell*, 54 So.3d at 121.

The burden of proving the defects, and that the defects are due to faulty materials or workmanship, is on the owner.  *Maxwell*, 54 So.3d 118.  If the owner successfully carries his burden of proof, the owner is entitled to the cost of repairs necessary to remedy the defect.  *Id.*  "The remedy is to reduce the contract price in an amount necessary to complete the work or to correct the defective work according to the terms of the contract." *Id*. at 121.

In *Maxwell*, this court found no error in the trial court's finding that the contractor was entitled to the amounts already received for installing cabinets.  Although there were cosmetic issues with the cabinets, this court explained, "The trial court found that the cabinets were fit for their intended use, despite their defects, based on the fact that Mr. Cayse is currently using them . . . ." *Id*. at 122.  Therefore, despite the faults, this court could not justify giving the owner the cabinets for free.  Although this court reviewed expert testimony that the cabinets could not be saved and would fall off the walls with dishware, this court noted the photographs entered into evidence showed the cabinets holding dishware.  This court summarized the remainder of the testimony: "The remainder of Mr. Cayse's witnesses and experts testified only that the work Mr. Maxwell performed was not to his usual degree of quality, or that the work was not up to their own high standards." *Id*.  Therefore, this court could not say the trial court was manifestly erroneous in concluding the owner failed to prove the cabinets were so defective they should be demolished.

In the case at bar, the trial court heard Mr. Williams testify that he completed all tasks he was contracted to do, noting two deviations were made; one due to Mr. Alexander purchasing a different type of oven hood than agreed on, and the other, placing a receptacle in a lower location, due to what Mr. Williams perceived as a safety hazard.

While Mr. Alexander alleged Mr. Williams was required to put the oven vent through the roof, his own witness, Larry Carmouche testified he has seen an oven vented both ways, through the roof or into the attic. Mr. Alexander further asserted Mr. Williams failed to install a three compartment sink. However, his own witness, Mr. Carmouche, contradicted that allegation and testified the sink was installed when he arrived. Mr. Carmouche did testify the cabinet above the oven had to be lowered because a beam interfered with its opening, but Mr. Williams testified he specifically agreed to install a long neck vent for that reason. Mr. Alexander failed to provide a long neck vent for Mr. Williams to install.

Mr. Alexander's second witness, Ozer Alexander, testified the water heater and dryer plugs were simply hard to get to, not that they were improperly installed or did not work. Additionally, there was testimony presented regarding whether the stove receptacle should be a four or three wire prong, but that testimony was contradicted by Mr. Williams. The trial court's factual findings should not be set aside unless they are clearly wrong or manifestly erroneous. *Rosell*, 549 So.2d 840.

Finally, Mr. Alexander presented Francis Alexander as a plumber. Mr. Francis testified Mr. William's work was operational, with the exception of the drain that leaked onto the floor. Mr. Francis testified it would cost $25.00 to fix

the leaking drain. The trial court deducted the cost of the $25.00 repair from Mr. William's contract.

The trial court recognized that while Mr. Alexander may be dissatisfied with Mr. Williams's work, the testimony and evidence presented proved only that Mr. Williams's work may not have been performed to the witnesses' high standards, referring to Mr. Williams's work as a "Volkswagen" not a "Cadillac." The evidence and testimony support the trial court's finding that Mr. Williams completed the work the parties agreed upon and that the work was operational. Furthermore, the trial court properly deducted the costs required to repair work that was deficient, i.e., the leaking drain, as Mr. Alexander is entitled to have the price reduced by the amount necessary to perfect or complete the work.

## CONCLUSION

Based on the testimony presented and for the above reasons, this court cannot say the trial court was manifestly erroneous in its conclusions. The judgment is affirmed. Costs of this appeal are assessed to Appellant, Mr. Alexander.

**AFFIRMED.** This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.